United States District Court
Southern District of Texas

**ENTERED**

July 11, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RYAN EDWARD SMITH, SR., | § | |
| R.E.S., BY NEXT FRIEND, | § | |
| D.A.S., BY NEXT FRIEND, | § | |
| D.D.S., BY NEXT FRIEND, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. H-18-3470 |
| | § | |
| TEXAS DEPARTMENT OF CHILD | § | |
| PROTECTIVE SERVICES, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court are the following motions: Defendant Trung Tran's Motions to Dismiss (Docs. 4, 15, 50); Defendant Chad Bradshaw's Motions to Dismiss (Docs. 5, 16, 51); Defendants Annette Denton, Brandice Haller, Leigh Mizell, Stephanie Sammons, and Texas Department of Family and Protective Service's Motions to Dismiss (Docs. 18, 52); Plaintiff's Motion for Default Judgments against Freeport Police Department, Captain Raymond Garivey, Kristy Mercado, Ernesto Rodriguez, Detective Jones, Officer Panigua, Detective Sergeant Juanita Cardoza and Bill Helfand (Doc. 53); Defendant Brian Hrach's Motion to Dismiss (Doc. 67); Defendants Kelly Gabler and Joseph Weinpel's Motion to Dismiss (Doc. 69); Defendants Chad Bradshaw, Trung Tran and Brian Hrach's Motion for Sanctions (Doc. 73); Defendant Venette Westoven's Motion to Dismiss (Doc. 75); and Defendants Macy Hubbard and Timothy Hubbard's Motion to Dismiss (Doc. 82).

The court has reviewed the motions, the responses and the live pleading.  For the reasons explained below, it is **RECOMMENDED** that the motions to dismiss be **GRANTED**, that Plaintiff's motion for default judgments be **DENIED,** and that Defendants Bradshaw, Tran and Hrach's motion for sanctions be **DENIED.**

### I.  Case Background

#### A.  <u>Factual Background</u>[1]

In December 2012, Plaintiff was charged with sexual abuse of his minor nephew, Jesse Nava.[2]  After Nava testified that Plaintiff never molested him, Plaintiff was acquitted.[3]  Defendant Assistant District Attorney Brian Hrach ("ADA Hrach") prosecuted that charge on behalf of the State of Texas.[4]

Plaintiff has three children.  The oldest, R.E.S., suffers from medical issues that have required hospitalizations.[5]  These medical issues prompted allegations of neglect by the Texas Department of Family and Protective Services ("TDFPS") in 2014.[6]

---

[1]     The court gleans the following background information from Plaintiff's complaints and the undisputed public records submitted by the parties.

[2]     <u>See</u> Doc. 40, Pl.'s 2ⁿᵈ Am. Compl. p. 5.

[3]     <u>See</u> <u>id.</u> p. 6.

[4]     <u>See</u> <u>id.</u>

[5]     <u>See</u> <u>id.</u> p. 16.

[6]     <u>See</u> <u>id.</u> pp. 15-16.  Although Plaintiff denominates the defendant governmental entity as the Texas Department of Child Protective Services, the correct name is the Texas Department of Family and Protective Services.  The court will use the TDFPS acronym for this entity.

It appears that at some unidentified time in the past, R.E.S. was removed from the custody of Plaintiff and his wife and was placed with foster parents, Timothy and Macy Hubbard.[7]  The Hubbards and the placement of this child do not appear to be related to the following events that concern the removal of the two younger children from Plaintiff's custody.[8]

On April 6, 2017, Leigh Mizell ("Mizell"), a caseworker for TDFPS, obtained a court order of protection from Judge Chad Bradshaw requiring the removal of Plaintiff's two younger children from Plaintiff's custody.[9]  Later that day, at approximately 4:30 p.m., Defendant Annette Denton ("Denton"), another caseworker for TDFPS, and Mizell attempted to serve Plaintiff with the court order of removal.[10]  The children were not at home with Plaintiff at the time, and Plaintiff refused to disclose the location of the children to Mizell and Denton.[11]  The TDFPS employees called police officers for assistance, and Plaintiff alleges that the officers came to his door every thirty minutes throughout the night

---

[7]   See id. p. 16.

[8]   Nonetheless, Plaintiff has named the Hubbards as parties and alleged that they kidnapped R.E.S.

[9]   See Doc. 72, Ex. A, Ord. for Protection and Notice of Hearing. According to the affidavits in support of the removal order, the removal was based on complaints by Plaintiff's wife of violence directed at herself and one of the children by Plaintiff.  See Doc. 28, Pl.'s Resp., Ex. A, Aff. of Stephanie Sammons ("Sammons") pp. 41-44; Ex. B, Aff. of Mizell, pp. 45-52.

[10]   See Doc. 1, Pl.'s Compl. p. 4.  Plaintiff claims these were "blank papers" and "fake court orders."  Id.

[11]   See id.

demanding possession of the children.[12]   The two boys were eventually found in the custody of Plaintiff's mother and were placed in the care of foster parents, Defendants Kelly Gabler and Joseph Weinpel.[13]   Plaintiff complains that the children were kidnapped by employees of TDFPS, who lied about having a court order authorizing them to take the children.[14]

On April 20, 2017, a post-removal adversary hearing was held before Judge Randal Hufstetler, presiding judge of the 300th Judicial District Court of Brazoria County, to determine whether the emergency order of removal should be terminated or extended.[15] Defendant Assistant District Attorney Trung Tran ("ADA Tran") represented the TDFPS.[16]

In a post-hearing order dated May 2, 2017, the order of removal was partially amended.  The court ordered that Plaintiff's wife could have supervised visits with the two younger children but that Plaintiff be denied any visitation rights pending the final trial on TDFPS's petition to terminate Plaintiff's parental rights.[17]

---

[12]    See id.

[13]    See id. p. 17.  Plaintiff also refers to the couple as the Weinpals. See id. p. 19.

[14]    See id. p. 4.

[15]    See Doc. 76, Temp. Ord. Following Adversary Hearing.

[16]    See id. p. 1.

[17]    See Doc. 19, Sealed Docs., Temp. Ord. Following Adversary Hearing pp. 28-40.

4

The jury trial on the termination of Plaintiff's parental rights was held on September 17-21, 2018.[18]   Defendant Sammons testified on behalf of TDFPS, and Defendant ADA Tran represented TDFPS.[19]   Plaintiff's wife was represented by Defendants Shannon Tigner and T.J. Roberts.[20]   Plaintiff was represented by Defendant Ed Rose, Jr.[21]   Defendant Michelle Stover was present as the attorney and guardian ad litem for the two younger children.[22] Based on the testimony presented, the jury answered questions that resulted in the termination of Plaintiff's parental rights for his two younger boys.[23]

In a post-trial order dated October 15, 2018, the court appointed TDFPS as the Permanent Managing Conservator for both younger children.[24]   Plaintiff's wife was made the possessory conservator for the children.[25]   She was enjoined from disclosing any information concerning the two children to Plaintiff.[26]

---

[18]   See Doc. 19, Sealed Docs., Final Ord. Affecting the Parent-Child Relationship and Ord. of Termination pp. 41-53.

[19]   See id. p. 41.

[20]   See id.   These defendants have not been served.

[21]   See id.   Mr. Rose has not been served.

[22]   See id.   Ms. Stover has not been served.

[23]   See Doc. 19, Sealed Docs., Final Ord. Affecting the Parent-Child Relationship and Ord. of Termination pp. 42-43.

[24]   See id. p. 44.

[25]   See id. p. 45.

[26]   See id. p. 46.

Plaintiff appealed the court's judgment to the Texas Court of Appeals for the First District on January 29, 2019.[27]  On May 10, 2019, the appeal was dismissed as untimely.[28]

**B.  Procedural Background**

Plaintiff filed this action on September 25, 2018, against TDFPS, and its employees Sammons, Denton, Brandice Haller ("Haller") and Mizell, alleging that they violated his right to a fair trial and wrongfully removed his children from his custody without a court order.[29]  Plaintiff speculated that they did this because "they still believe that I had sexually molested my nephew . . . ."[30]  Plaintiff sought recovery of his attorney's fees.[31]  In a handwritten summons, Plaintiff purported to address service of process to Denton, Mizell, Sammons, ADA Tran, and Judge Chad Bradshaw ("Judge Bradshaw").[32]  On October 24, 2018, Defendants ADA Tran and Judge Bradshaw filed motions to dismiss.[33]

---

[27]    See In the Interest of D.A.S. and D.S., Children, No. 01-19-00073-CV, Tex. App. Houston [1st Dist.] Mem. Op. Dated. Feb. 26, 2019.

[28]    See id. pp. 2-3.

[29]    See Doc. 1, Pl.'s Orig. Compl. pp. 4-6.

[30]    See id. p. 6.

[31]    See id. p. 8.

[32]    See Doc. 1-1, Summons in a Civil Action.  Based on the complaint, it appears that Plaintiff sued Judge Chad Bradshaw because Plaintiff believes that Judge Bradshaw did not sign a court order authorizing removal of the children from Plaintiff's custody.  See Doc. 1, Pl.'s Orig. Compl. p. 5.  ADA Tran was not mentioned in the Original Complaint.

[33]    See Doc. 4, Def. ADA Tran's Mot. to Dismiss; Doc. 5, Def. Judge Bradshaw's Mot. to Dismiss.

On October 29, 2018, Plaintiff filed an amended complaint against TDFPS, its employees, Denton, Mizell, and Sammons, Judge Bradshaw, Michelle Stover, Shannon Tigner, T.J. Roberts, Edward Rose Jr., Judge K. Randal Hufstetler, Shane Kersh, and Tiffany Butler, alleging that they kidnapped his two younger children.[34] Plaintiff complained that these individuals violated his civil rights when they coached his wife to testify against him and when he was wrongfully accused of molesting his nephew in 2012.[35]  In addition to the recitation of the events surrounding the loss of custody of his two younger children, Plaintiff also recounted the circumstances under which he and his wife were wrongfully accused of medically neglecting of their oldest child in 2014 and lost custody of him.[36]

In the amended complaint, Plaintiff alleged that Defendants denied him access to classes, gave false testimony in court, misled the judge and jury, attempted to break up his marriage, and failed to disclose Brady material.[37]

After service of this complaint, more motions to dismiss were

---

[34]   See Doc. 14, Pl.'s 1st Am. Compl. p. 1.

[35]   See id. pp. 1-2.

[36]   See id. pp. 2-5.  According to Plaintiff, the child's medical condition was caused by pyloric stenosis.  Id.

[37]   See id. pp. 9-10, 14.

filed by ADA Tran,[38] Judge Bradshaw,[39] and the TDFPS Defendants.[40]

On November 23, 2018, Plaintiff responded to these motions to dismiss[41] and, on December 3, 2018, filed his Second Amended Complaint.[42]  The Second Amended Complaint made similar allegations as the prior complaints and added allegations against the foster parents of all three children, several police officers who assisted TDFPS in removing the children from Plaintiff's mother's custody in April 2017, and the court-appointed psychologist, Venette Westoven, Ph.D ("Dr. Westoven"), among others.[43]  The Second Amended Complaint alleged that the foster parents and TDFPS workers kidnapped the children and terminated his parental rights in retaliation for his complaints of their wrongful conduct in removing the children from his custody.[44]

## II.  Dismissal Standards

Pursuant to Rule 12(b)(1), dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), 12(h)(3).  The party asserting jurisdiction bears the burden of proof to show that jurisdiction

---

[38]   See Doc. 15, Def. ADA Tran's Mot. to Dismiss.

[39]   See Doc. 16, Def. Judge Bradshaw's Mot. to Dismiss.

[40]   See Doc. 18, TDFPS Defs.' Mot. to Dismiss.

[41]   See Doc. 32, Pl.'s Resp.

[42]   See Doc. 40, Pl.'s 2nd Am. Compl.

[43]   See id. pp. 17, 19.

[44]   See id. p. 18.

does exist.   Gilbert v. Donahoe, 751 F.3d 303, 307 (5th Cir. 2014)(citing Ramming v. United States, 281 F.3d 158, 161 (5th Cir.2001)).

The court may decide a motion to dismiss for lack of jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Ramming, 281 F.3d at 161 (citing Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996)).  The court, in determining whether it is properly vested with subject matter jurisdiction, is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."  Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)(quoting Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004)).

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  The court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of

the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. 678.

### III.  Analysis

There are numerous motions to dismiss pending before the court urging multiple grounds for dismissal of this action.  All defendants urge dismissal under the Rooker-Feldman doctrine.  The TDFPS Defendants also argue that they are protected by Eleventh Amendment immunity, sovereign immunity and qualified immunity. Defendants ADA Tran, ADA Hrach, Judge Bradshaw and Dr. Westoven argue their entitlement to absolute immunity as an alternative ground for dismissal.  Finally, the foster parents argue that Plaintiff has failed to state a claim against them under federal law.

### A.  Rooker-Feldman Doctrine

A federal district court does not have jurisdiction to

entertain collateral attacks on final judgments of a state court. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 415 (1923); Liedtke v. State Bar of Tex., 18 F.3d 315, 317, (5th Cir.), cert. denied, 513 U.S. 906 (1994). State courts provide the forum for challenging the correctness of the judgment or the constitutionality of the proceedings. Liedtke, 18 F.3d at 317.

Even constitutional claims, if they are "inextricably intertwined" with the state court's decision, fall outside the federal district court's jurisdiction. Feldman, 460 U.S. at 482 n.16; Musselwhite v. State Bar of Tex., 32 F.3d 942, 946 (5th Cir. 1994), cert. denied, 515 U.S. 1103 (1995); Reed v. Terrell, 759 F.2d 472, 473-74 (5th Cir.), cert. denied, 474 U.S. 946 (1985). A litigant may not obtain review of a state court action by filing a complaint in a federal court cast in the form of a civil rights action. Liedtke, 18 F.3d at 318.

Plaintiff's appeal of the state court judgment is now final and triggers application of the Rooker-Feldman doctrine. A review of Plaintiff's Second Amended Complaint and his requests for relief reveal that the suit is "inextricably intertwined" with the state court's unfavorable order terminating his parental rights as he seeks recovery for "loss of compensation and benefits, mental and emotional distress, humiliation, loss of reputation, loss of enjoyment of life and other pecuniary and non-pecuniary losses,

pain and suffering, pain and agony [and] emotional pain" as a result of the termination of his parental rights.[45]  Plaintiff also seeks to enjoin all defendants from "ultra vires" acts.[46]

Merely framing the complaint in terms of a civil rights violation does not vest this court with the jurisdictional authority to entertain the action.  Liedtke, 18 F.3d at 318. Plaintiff filed this suit after an unfavorable jury verdict was entered and argues that because he filed this lawsuit before the state court judgment was final, he can evade the Rooker-Feldman doctrine after his state court judgment has become final.  The court disagrees in light of the extant dismissal of Plaintiff's appeal; Plaintiff is the classic state court loser attempting to undo the effects of an unfavorable final judgment.  As there is a now a final state court judgment, the court must give preclusive effect to it.  See 28 U.S.C. § 1738.

As it appears that the entirety of this action relates to a claim of damages arising out of the loss of a state court action, it must be **DISMISSED** for want of subject matter jurisdiction.

**B.   Eleventh Amendment Immunity/State Sovereign Immunity**

As an alternative ground for dismissal, the TDFPS Defendants[47] argue that they are entitled to sovereign immunity and Eleventh

---

[45]   See Doc. 40, Pl.'s 2nd Am. Compl. p. 19.

[46]   See id. p. 21.

[47]   The TDFPS Defendants are TDFPS, Sammons, Mizell, Haller and Denton.

Amendment immunity.  State sovereign immunity pursuant to the Eleventh Amendment[48] "operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." <u>Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n</u>, 662 F.3d 336, 340 (5th Cir. 2011)(citing cases).  However, Eleventh Amendment immunity is waivable, and, thus, "enacts a sovereign immunity from suit, rather than a nonwaivable limit on [federal] subject-matter jurisdiction." <u>Id.</u> (quoting <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 267 (1997)).

State sovereign immunity bars suits for money damages brought in federal court against a state by private citizens unless the state specifically waives its immunity through unequivocal consent to suit or Congress, in enacting a particular statute, "clearly and validly abrogated the state's sovereign immunity." <u>U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.</u> [hereinafter, <u>U.S. Oil Recovery Site PRPG</u>], 898 F.3d 497, 501 (5th Cir. 2018)(quoting <u>Perez v. Region 20 Educ. Serv. Ctr.</u>, 307 F.3d 318, 326 (5th Cir. 2002)); <u>see also</u> <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66 (1989).  "State sovereign immunity protects not only states from suit in federal court, but also 'arms of the state.'" <u>U.S. Oil Recovery Site PRPG</u>, 898 F.3d at 501

---

[48]    The Fifth Circuit recently noted, "While state sovereign immunity is sometimes described as Eleventh Amendment immunity, the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." <u>U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.</u>, 898 F.3d 497, 501 (5th Cir. 2018)(internal quotation marks omitted)(quoting <u>Alden v. Maine</u>, 527 U.S. 706, 711 (1999)).

(citing <u>Richardson v. S. Univ.</u>, 118 F.3d 450, 452-54 (5th Cir. 1997)).    The determination whether the TDFPS is entitled to sovereign immunity is a question of law for the court to answer. <u>See</u> <u>U.S. v. Tex. Tech Univ.</u>, 171 F.3d 279, 288 (5th Cir. 1999).

The TDFPS Defendants, a state agency and its employees sued in their official capacities, are entitled to claim sovereign immunity and Eleventh Amendment immunity related to Plaintiff's claims for civil damages.[49]    Those claims must be dismissed for want of jurisdiction.

To the extent that Plaintiff intended to sue the individual TDFPS employees in their individual capacities for constitutional violations pursuant to 42 U.S.C. § 1983, each TDFPS employee has claimed qualified immunity for her actions.

Qualified immunity protects governmental employees performing discretionary duties from the imposition of damages if their actions could reasonably be thought to be "consistent with the rights they are alleged to have violated."    <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987).    In determining whether a defendant is entitled to claim qualified immunity for her actions, the court may consider whether the facts show that any individual defendant's conduct violated a constitutional right or whether the

---

[49]    While the court acknowledges that the <u>Ex Parte Young</u> doctrine provides a limited exception to Eleventh Amendment immunity, it only applies to prospective acts based on alleged ongoing violations of the U.S. Constitution. <u>See</u> <u>Ex Parte Young</u>, 209 U.S. 123 (1908).  As Plaintiff's case has been resolved, there are no potential ongoing violations of the U.S. Constitution that would fall outside of the <u>Rooker-Feldman</u> jurisdictional bar.

law clearly established that the official's conduct was unlawful. See Pearson v. Callahan, 555 U.S. 223, 243-44 (2009); Aucoin v. Haney, 306 F.3d 268, 272 (5th Cir. 2002). If Plaintiff can establish the violation of a constitutional right, the court must determine if the right was clearly established at the time of the incident. Id. If the law was clearly established at the time, the court must then consider whether the defendant's conduct was objectively reasonable. Aucoin, 306 F.3d at 171.

With reference to the individual TDFPS employees, Plaintiff generally alleges in his Second Amended Complaint that they violated his and his children's Fourth and Fourteenth Amendment rights by withholding Brady material[50] and by suppressing the "emergency removal sheet" and replacing it with the court order of removal.[51] Plaintiff also alleges that the individual defendants submitted "implicit and explicit false and fraudulent (sworn) hearsay testimony both direct (oral) and indirect (affidavit)" to the court resulting in the order of removal.[52]

Turning first to Plaintiff's allegation regarding Brady material, Brady v. Maryland, 373 U.S. 83 (1963), requires that the prosecution in a criminal case disclose to the defendant material

---

[50]     As the court understands it, the Brady materials referenced are certificates of completion from classes taken by Plaintiff. See Doc. 40, Pl.'s 2nd Am. Compl. p. 5.

[51]     See Doc. 40, Pl.'s 2nd Am. Compl. pp. 1, 5.

[52]     See id. p. 12.

that is favorable to the defense.  Even if the court were to assume that these TDFPS employees failed to turn over Plaintiff's certificates of completion for certain classes to their attorney and that those certificates could be considered <u>Brady</u> material, Plaintiff cites to no case law that has applied <u>Brady</u> to a child custody trial.  Accordingly, the court concludes that Plaintiff has failed to allege a violation of a clearly established constitutional right on this claim against the TDFPS employees in their individual capacities.

Next, Plaintiff alleges that the TDFPS employees "suppressed" an emergency removal sheet and replaced it with a court order, which the court characterizes as raising due process and Fourth Amendment claims, namely, that the children were removed from Plaintiff's custody without a court order.

Here, the Texas Family Code permits the TDFPS to file an ex parte petition to remove children from their home under certain exigent circumstances without prior notice to the parents.  <u>See</u> Tex. Fam. Code §§ 262.101 and 262.102.  The record clearly reflects that a judge issued a court order on April 6, 2017, authorizing removal of the children on an emergency basis, and that TDFPS employees attempted to serve that order on Plaintiff on that date. The April 6, 2017 order is equivalent to a warrant satisfying the Fourth Amendment.  <u>See</u> <u>Gates v. Tex. Dept. of Prot. & Reg. Svs.</u>, 537 F.3d 404, 429 n.16 (5th Cir. 2008)("An order properly issued by

16

a court pursuant to Texas Family Code § 262.102, which authorizes state courts to issue emergency orders to take possession of a child, [is sufficient] to meet the "warrant" requirement."). The order of removal set a post-seizure hearing date as required by the Texas Family Code.[53]

As there was a court order authorizing the pre-hearing removal of the children issued on April 6, 2017, and the children were removed from Plaintiff's mother's custody on April 7, 2017, Plaintiff has failed to allege the violation of a due process right based on the factually unsupported theory of a nonexistent court order.

Finally, Plaintiff vaguely alleges that the individual TDFPS employees made false statements via oral testimony and sworn affidavit. The Fifth Circuit has recognized that a child protective services ("CPS") worker has absolute immunity from Section 1983 liability for her judicial testimony at an adversarial hearing. See Stem v. Ahearn, 908 F.2d 1, 5-6 (5th Cir. 1988)(citing Hodorowski v. Ray, 844 F.2d 1210, 1212-13 (5th Cir. 1988)). To the extent that Plaintiff claims damages for testimony given by any TDFPS employee in court, that claim must be dismissed.

The same is not true for out-of-court statements made to obtain an order for the removal of a child from his parent's custody. In Hodorowski, the court found that the actions of a CPS

---

[53]    See Doc. 19, Ord. for Protection of a Child in an Emergency and Notice of Hearing p. 27.

worker who removed children from a home were more akin to those of police officers and were not entitled to absolute immunity for those actions.   Like police officers, CPS workers were to be afforded qualified immunity for their actions.  See Hodorowski, 844 F.2d at 1214.

Turning to the first prong of the qualified immunity analysis, the court finds that it was clearly established at the time of the April 6, 2017 incident that a police officer may be subject to Section 1983 liability for making "a false statement knowingly and intentionally, or with reckless disregard for the truth."  See Michalik v. Hermann, 422 F.3d 252, 258 n.5 (5th Cir. 2005)(quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).  Therefore, it would violate a clearly established right for Sammons or Mizell to knowingly or recklessly make a false statement under oath in an affidavit in order to remove a child from its parent.

However, Plaintiff has failed to provide a factual basis for his allegation that Sammons or Mizell intentionally or recklessly provided false information in their April 6, 2017 affidavits. Plaintiff has been afforded both a hearing on the temporary removal of the children and a jury trial on the petition to terminate his parental rights.  At these hearings he had the opportunity to test the veracity of statements made by Sammons and Mizell in their affidavits, yet he has not pointed to any particular statement made by either defendant as being false.  Accordingly, the court finds

that Plaintiff has failed to state a claim against Sammons or Mizell for knowingly making a false statement under oath in order to procure the order to remove the children from his home.

Plaintiff has also failed to allege that any supervisor knew about and approved the making of a false statement in either affidavit. Therefore, those claims against supervisory employees must be dismissed as well. Plaintiff's Section 1983 claims must be dismissed against the individual TDFPS defendants.

Finally, to the extent that Plaintiff intended to bring claims against the TDFPS or its employees in their official or individual capacities under Title VII, 42 U.S.C. § 1981, or 42 U.S.C. § 1985, he has failed to state claims for relief under those statutes.

## C. <u>Claims of Absolute Immunity</u>

Judge Bradshaw, ADA Tran, ADA Hrac, and Dr. Westoven each raise the alternative defense of absolute immunity from suit. Their motions are well-taken.

In <u>Boyd v. Biggers</u>, 31 F.3d 279, 284 (5th Cir. 1994), the Fifth Circuit reaffirmed the long standing doctrine that a judge is entitled to absolute immunity for his judicial actions. A plaintiff may not overcome a claim of judicial immunity by alleging bad faith or malice. <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991). Here, Plaintiff complains that Judge Bradshaw either issued a court order requiring the removal of Plaintiff's children from his custody or did not issue the court order. Taking either allegation

as true, Plaintiff's claims against Judge Bradshaw arise from the performance of judicial duties for which Judge Bradshaw is absolutely immune.[54]

Defendant ADA Tran and ADA Hrach also enjoy prosecutorial immunity. See Imbler v. Pachtman, 424 U.S. 409, 427 (1976); Boyd v. Biggers, 31 F.2d at 285; Shipula v. Tex. Dept. of Family and Protective Servs., No. H-10-3688, 2011 WL 1882521 at *14 (S.D. Tex. May 17, 2011)(finding that prosecutorial immunity applied in termination of parental rights hearings). Based on the allegations against ADA Tran and ADA Hrach, they are entitled to absolute immunity from suit.

Dr. Westoven was the court-appointed psychologist who performed a psychological evaluation of Plaintiff in connection with the child custody proceeding.[55] She enjoys absolute immunity from Section 1983 liability for witness testimony. See Stem, 980 F.2d at 6; Delcourt v. Silverman, 919 S.W.2d 777, 783 (Tex. App. – Houston [14th Dist.] 1996)(stating that without the protection of absolute immunity, professionals would be reluctant to take court appointments).

As an alternative ground for dismissal, Judge Bradshaw, ADA

---

[54]     Although it appears that Plaintiff has not served Judge Hufstetler, he, too, is immune from suit for his judicial actions.

[55]     See Doc. 76-1, Ex. B, Subpoenas to Testify pp. 1-16.

Tran, ADA Hrac, and Dr. Westoven are immune from suit.[56]

### D.  Claims Against Foster Parents

Plaintiff alleges that his children's foster parents have kidnapped them.  In light of the entire record and evidence showing that Plaintiff's two younger children were removed from his custody after entry of an ex parte court order, a temporary court order after an adversarial hearing and a final court order following a jury trial, these allegations are frivolous.

Allegations concerning the removal of Plaintiff's oldest child from Plaintiff's custody in 2014 are time-barred.  See Heilman v. City of Beaumont, 638 F. App'x 363, 366 (5th Cir. 2016)(stating that, in Texas, a Section 1983 claim must be filed within two years of the constitutional violation).

Plaintiff has failed to state a claim against Macy Hubbard, Timothy Hubbard, Kelly Gabler and Joseph Weinpel.

### E.  Motion for Default Judgment

On December 21, 2018, Plaintiff moved that a default judgment be entered against the Freeport Defendants and Bill Helfand, their attorney.[57]  In the motion, Plaintiff complains that Mr. Helfand asked for an extension of time to file a responsive pleading and

---

[56]     Because the court has recommended dismissal of Plaintiff's claims based on the Rooker-Feldman doctrine and absolute immunity from suit, it does not reach additional alternative grounds for dismissal raised in the Defendants' motions.

[57]     See Doc. 53, Pl.'s Mot. for Default J. p. 1.

then failed to file an answer in the time allowed by law.[58]

In their response, the Freeport Defendants argue that, while some of them were named in Plaintiff's First Amended Complaint, none of them was named in Plaintiff's Second Amended complaint, the live pleading.[59]  As they believed they had been nonsuited by the pleading amendment, there was no need to answer the lawsuit.

As the Freeport Defendants correctly point out, an amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." See King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994)(citing Boelens v. Redman Homes, Inc., 759 F.2d 504, 508 (5th Cir. 1985). **G.  Motion for Sanctions**

Defendants Judge Bradshaw, ADA Tran and ADA Hrach have moved the court for an order of sanctions against Plaintiff.  They argue that sanctions are warranted because it is clear that Plaintiff is using this suit to harass everyone involved in his child custody proceeding, the caseworkers, their supervisors, police officers, attorneys, the guardian ad litem, the foster parents, the child psychologist, the prosecutors, the judges, and even his own

---

[58]    See id. p. 2.

[59]    Although Plaintiff makes a passing reference to several police officers on page 15 of his Second Amended Complaint, the vague naming of officers is wholly insufficient to state a claim against them for violations of 42 U.S.C. § 1983.

sister.[60]  Defendants point out that Plaintiff has made outrageous and unfounded accusation of kidnapping, fabrication of evidence, and a conspiracy against him.  Defendant ADA Hrach points out that he has been sued for actions taken over four years after the limitations period has expired.

The court agrees that in light of the undisputed public records from the court proceedings, Plaintiff's claims of kidnapping and constitutional violations have no merit.  That said, the court declines to sanction Plaintiff at this time.  If Plaintiff continues to pursue legally frivolous and factually baseless claims, the court may find that sanctions are warranted, including the imposition of attorney's fees.

### IV.  Conclusion

In light of the foregoing, it is **RECOMMENDED** that Defendant Trung Tran's Motions to Dismiss (Docs. 4, 15, 50) be **GRANTED**; that Defendant Chad Bradshaw's Motions to Dismiss (Doc. 5, 16, 51) be **GRANTED**; that the TDFPS Defendants' Motions to Dismiss (Doc. 18, 52) be **GRANTED**; that Plaintiff's Motion for Default Judgments against Freeport Police Department, Captain Raymond Garivey, Kristy Mercado, Ernesto Rodriguez, Detective Jones, Officer Panigua, Detective Sergeant, Juanita Cardoza and Bill Helfand (Doc. 53) be **DENIED**; Defendant Brian Hrach's Motion to Dismiss (Doc. 67) be

---

[60]     See Doc. 73, Defs.' Mot. for Sanctions.

**GRANTED**; that Defendants Kelly Gabler and Joseph Weinpel's Motion to Dismiss (Doc. 69) be **GRANTED**; that Defendants' Chad Bradshaw, Trung Tran and Brian Hrach's Motion for Sanctions (Doc. 73) be **DENIED**; that Defendant Venette Westoven's Motion to Dismiss (Doc. 75) be **GRANTED**; and that Defendants Macy Hubbard and Timothy Hubbard's Motion to Dismiss (Doc. 82) be **GRANTED**.

**If this recommendation is adopted, the court further recommends that the court not permit any additional amendments to the pleadings and that a final order of dismissal be entered.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 11th day of July, 2019.

Nancy K. Johnson
United States Magistrate Judge

24